**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-0209-24
                A-0297-24

ROSEMARY BRODY,

    Plaintiff-Appellant,

v.

NICHOLAS SANTORO, CEI
CONTRACTORS, SOLEIL SOTHEBYS
INTERNATIONAL REALTY, and TROY
ROSENZWEIG,

    Defendants,

and

NICHOLAS SANTORO,

    Third-Party Plaintiff-
    Respondent,

v.

RE/MAX PLATINUM PROPERTIES,
LINDA NOVELLI, FUNK INSPECTION
SERVICES, INC., and BRUCE FUNK,

    Third-Party Defendants.

_____

ROSEMARY BRODY,

     Plaintiff-Respondent,

v.

NICHOLAS SANTORO, CEI
CONTRACTORS, SOLEIL SOTHEBYS
INTERNATIONAL REALTY, and TROY
ROSENZWEIG,

     Defendants,

and

NICHOLAS SANTORO,

     Third-Party Plaintiff-
     Appellant,

v.

RE/MAX PLATINUM PROPERTIES,
LINDA NOVELLI, FUNK INSPECTION
SERVICES, INC., and BRUCE FUNK,

     Third-Party Defendants.

_____

Argued (A-0209-24) and Submitted (A-0297-24)
October 21, 2025 – Decided August 4, 2026

Before Judges Gooden Brown and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law
Division, Atlantic County, Docket No. L-0324-19.

Daniel J. Gallagher argued the cause for Rosemary Brody, appellant in A-0209-24 and respondent in A-0297-24.

Carmen M. Finegan (Carmen M. Finegan, LLC) argued the cause for Nicholas Santoro, respondent in A-0209-24 and appellant in A-0297-24.

PER CURIAM

These appeals, which we consolidate for purposes of issuing a single opinion, arise from a Law Division jury verdict of no cause of action on the breach of contract claim plaintiff Rosemary Brody alleged against defendant Nicholas Santoro relating to her purchase of residential real property. Plaintiff appeals from the July 2, 2024 order dismissing her complaint with prejudice after entry of the jury verdict, and the July 19, 2024 order denying her post-trial motion for sanctions. Defendant appeals from the August 16, 2024 order denying his post-trial motion for attorney's fees and costs pursuant to Rule 1:4-8 and the Frivolous Litigation Act (FLA), N.J.S.A. 2A:15-59.1. We affirm.

I.

In 2005, defendant hired a contractor to construct a bayside residence in Ventnor City. A certificate of occupancy was issued for the new home in 2007.

In 2011, the property was damaged by a storm. Defendant filed an insurance claim for the damage. According to defendant, he used the proceeds from the claim to repair the property.

On October 29, 2012, the interior of the home suffered water damage during Superstorm Sandy. Defendant filed a claim with his insurance carrier, Lloyd's of London (Lloyd's), alleging over $271,000 in damages, which included replacement of all subfloors because of water damage. After obtaining an expert report (the SEA report), Lloyd's denied the claim based on its conclusion that although the home was water damaged, most of the damage was caused by continuous leaks from long-term structural deficiencies arising during construction of the property, and not from Superstorm Sandy.

On October 23, 2013, defendant filed suit against Lloyd's in the Law Division contesting the denial of his claim. On February 12, 2015, arbitrators awarded defendant $48,575. He rejected the arbitration award and sought a trial de novo. On July 17, 2015, after Lloyd's made an offer of judgment of $60,000, the matter settled. In November 2015, defendant hired a contractor to replace the roof of the residence, but did not repair the water-damaged subfloors.

Shortly thereafter, defendant listed the property for sale. At the time, he signed a seller's property condition disclosure statement indicating the roof was

4

recently replaced due to damage from Superstorm Sandy and there were no other material defects to the property.

On August 23, 2016, plaintiff, an experienced real estate agent, signed a contract in which she agreed to purchase the property for $1,150,000. At no time prior to execution of the sales contract did defendant inform plaintiff there had been damage to the property caused by long-term leaking and water penetration, or that he sued Lloyd's over its denial of his claim for water-related damage to the subflooring he claimed was caused by Superstorm Sandy.

Plaintiff understood the importance of obtaining an inspection before purchasing residential real estate. She always recommended her clients obtain a property inspection before purchasing a home. Plaintiff once terminated a residential real estate contract based on the results of a home inspection.

On August 31, 2016, plaintiff received a property inspection report prepared by defendant Bruce Funk. The report, which was based on Funk's visual inspection of the property, identified potential problems with the stucco on the exterior of the home. The expert noted he was unable to determine if water had intruded into the home based only on his visual inspection and recommended plaintiff obtain a moisture intrusion analysis of the residence. Plaintiff elected not to obtain a moisture intrusion analysis.

A-0209-24

On November 9, 2016, the parties closed on the sale of the property. Plaintiff thereafter moved into the residence. A short time later, plaintiff experienced water leakage and detected water damage to the home. A contractor repairing a pipe removed flooring and noticed the second-floor subflooring was rotted from long-term water damage and covered in mold. Plaintiff suspected defendant knew of the extensive water damage, which he failed to reveal at the time of the sale.

Because of a leaky shower, plaintiff's daughter moved from a first-floor bedroom to a second-floor bedroom that had not previously been occupied by plaintiff's family. While preparing the room, she discovered documents, including the adjuster's report on which defendant relied in support of his claim with Lloyd's, the transcripts of defendant's deposition regarding the substantial water damage he claimed was caused by Superstorm Sandy, the SEA report obtained by Lloyd's highlighting long-term water damage from negligent construction of the home, and the pleadings in defendant's legal challenge to the denial of his claim. The origin of these documents and their admissibility as evidence were a source of contention between the parties.

Plaintiff claimed defendant inadvertently left the documents, which were intermingled with personal information and photos of defendant's family, when

6

he vacated the home. She argued the documents establish defendant was aware of the extensive water damage to the subfloors of the residence, which he intentionally concealed at the time of the sale. Defendant denied knowledge of the documents and the long-term water damage to the home. He argued the Lloyd's claim was handled by an adjustor who did not share the details of the claim with him. Defendant admitted leaving appliance manuals, warranties, a list of contractors, a manual for a boat plaintiff purchased from him, and similar materials in a box in the first-floor kitchen, but denied leaving documents in the second-floor room where they were found by plaintiff's daughter.

Plaintiff hired a consulting group to prepare a moisture intrusion analysis of the home. The resulting report revealed there was long-term and continuous water damage to the residence caused by negligent construction of the property.

On July 30, 2019, plaintiff filed a nine-count complaint against defendant alleging: common law fraud, consumer fraud, breach of contract, negligent misrepresentations and omissions, intentional infliction of emotional distress, negligent infliction of emotional distress, fraud in the inducement, and negligent construction.[1]

---

[1] Plaintiff also asserted claims against additional parties and defendant filed a third-party complaint alleging multiple claims against several parties. All

Prior to trial, defendant moved to preclude testimony and documents relating to Superstorm Sandy, the Lloyd's claim, the SEA report, and any damage allegedly arising from the storm. He argued the documents discovered by plaintiff's daughter were unauthenticated and inadmissible hearsay. Plaintiff opposed the motion.

On June 12, 2023, the motion court issued a written decision denying defendant's motion. The court found:

> Contrary to [d]efendant's contentions, information regarding the [Superstorm] Sandy insurance claim is directly relevant to [p]laintiff['s] claims. Whether the home sustained some type of water damage is not at issue. The issues for the trier of fact are whether [d]efendant knew about the water issues and whether he failed to disclose the issues to [p]laintiff. Plaintiff discovered a box of items [d]efendant left behind that contained the SEA report, the 2012 insurance claim, and a transcript of [d]efendant's 2014 deposition along with personal items such as photographs and bank statements. . . .
>
> The 2012 insurance claim is relevant to the issue of whether [d]efendant knew about water damage and his actions thereafter. This evidence is not offered for the truthfulness of its contents, but to show that a claim for water damage to the subfloors was in fact made. The SEA expert's opinion <u>as to the cause of</u> the water [intrusion], if sought to be introduced for the truth of the matter asserted would be inadmissible hearsay.

claims, other than plaintiff's common law fraud and breach of contract claims against defendant, were resolved before trial.

8

The fact that [d]efendant made an insurance claim for damage to the subfloor caused by water intrusion is not hearsay. The SEA report is being introduced to show that the listener, (Santoro) took certain action as a result thereof.

. . . .

Defendant was put on notice of water issues in the subflooring of his property. Moreover, the SEA report states, "[t]he aforementioned patterns of damages suggest that the cracks within the floor tiles <u>are an ongoing issue not reasonably attributable to a one-time storm event.</u>" Defendant included the SEA report within the box of items "he left behind for [p]laintiff." Thus, the SEA report is relevant to show [d]efendant was put on notice that the damage to the property was not caused by a one-time storm event, but ongoing water issues. The SEA report is being offered to prove not the truthfulness of the contents, but only to show the statement regarding the ongoing water issues was made and [d]efendant failed to disclose same to the [p]laintiff before she purchased the property. Lastly, [d]efendant's prior testimony about the extensive water damages to the property in the prior action may be admitted under N.J.R.E. 803(b)(1).

[(Emphasis in original) (citations omitted).]

A June 12, 2023 order memorialized the court's decision.

The matter was tried by a different judge than the one who decided defendant's pretrial evidentiary motion. During trial, the court sustained defendant's objections to the admission of various documents and exhibits on a variety of grounds. In her brief, plaintiff provides transcript citations for six

such decisions. Of those evidentiary decisions, only one concerned a document relating to defendant's Lloyd's claim, which the trial court excluded on hearsay grounds.

After a multi-day trial, the jury returned a verdict of no cause of action on plaintiff's breach of contract claim, the only claim submitted to the jury. On July 2, 2024, the court entered an order dismissing the complaint with prejudice.

Plaintiff thereafter moved for the imposition of sanctions on defendant, including a declaration of a mistrial, for acting in bad faith during the trial. She argued defendant's counsel lacked candor with the court, in violation of RPC 3.3, because when he objected to the admission of some evidence at trial, he failed to inform the court of the June 12, 2023 pretrial decision denying his motion to exclude evidence. Plaintiff also argued defendant lied during his testimony. Defendant opposed the motion.

On July 19, 2024, the court issued an oral decision denying plaintiff's cross-motion. The court found plaintiff failed to comply with the notice requirements of Rule 1:4-8(b). The court also concluded plaintiff's reliance on R.P.C. 3.3 was misplaced. Finding defendant's counsel did not act in bad faith or engage in wrongful conduct, the court concluded plaintiff had not established a violation of the rule. The court also noted a violation of an ethical rule does

A-0209-24

not necessarily result in the award of sanctions or a declaration of a mistrial and plaintiff "did not cite any legal authority whatsoever that sanctions are available as a remedy" to her.

The court rejected plaintiff's argument defendant's counsel lacked candor because he failed to inform the court of the pretrial evidentiary decision. The court found it was "intimately familiar" with the decision issued on the pretrial motion and the "[t]rial testimony . . . was completely different than what" the judge who decided the pretrial motion "thought the facts of the case were" when he issued his decision.

The court continued,

> pretrial rulings are not binding upon me. If there is different testimony at trial, I have to rule on the objections as they come at the time. If there is different testimony at trial than there was pretrial, which in my mind in this case there was, not only do I have a duty to determine what the testimony has been in the trial, but I also have a duty to weigh under the [N.J.R.E.] 403 balancing whether or not it[ is] coming in which the pretrial judge is not always in a position to do because they[ are] not sitting there at the trial.
>
> . . . I was fully aware of [the pretrial judge's] rulings throughout the course of the trial.

A July 19, 2014 order memorialized the court's decision.

A-0209-24

Defendant subsequently moved for an award of attorney's fees and costs pursuant to Rule 1:4-8 and the FLA. He argued at the time she filed her complaint and amended complaint, plaintiff knew or should have known there was no basis for many of the claims she alleged against him, including strict liability tort, breach of express warranty, fraud in the inducements, fraudulent concealment, and consumer fraud. In addition, defendant argued the amount of damages plaintiff demanded lacked a factual basis. Finally, defendant argued plaintiff had no basis to claim he was aware of the documents discovered in the residence relating to the Lloyd's claim. Plaintiff opposed the motion.

On August 16, 2024, the court issued an oral decision denying defendant's motion. After a thorough recitation of applicable case law, the court stated:

> In this case . . . I do not find the plaintiff's lawsuit to be frivolous. I find that the plaintiff and plaintiff's counsel had an objectively reasonable good faith belief in the merits of plaintiff's claim when the complaint was filed and when the amended complaint was filed, and that those pleadings were substantially justified.
>
> I note that there were other defendants in the case when the complaint and amended complaint were filed and those matters resolved. And pursuing the litigation at that time during the pleading stage as the case proceeded through discovery and trial was justified based on the evidence . . . that the plaintiff had at the time those complaints were filed as discovery progressed and as the case went through trial.

12

The court continued:

> I find there was a rational basis and credible evidence for the plaintiff and her counsel to continue to pursue the matter, again, based on the testimony of the plaintiff, the testimony of . . . an expert that plaintiff called at the time of trial that was not an expert hired by the plaintiff, but rather a structural engineer who wrote a report not in connection with the lawsuit, the testimony of plaintiff's neighbors, the fact that the plaintiff survived the defendant's summary judgment motions, not once, but twice by two different judges . . . along with plaintiff surviv[ing] the defendant's motion for summary judgment . . . during the trial.

The court concluded "there was a rational good faith belief upon the plaintiff to pursue the claim in the manner in which she did." An August 16, 2024 order memorialized the court's decision.

Plaintiff filed an appeal from the July 2, 2024, and July 19, 2024 orders. She argues the trial court erred when it: (1) improperly excluded from evidence exhibits previously ruled admissible in a pretrial decision by another judge; (2) improperly struck portions of testimony in violation of N.J.R.E. 804(a)(4); (3) instructed the jury; (4) permitted defendant's counsel to make improper remarks in his closing argument to the jury; (5) did not sanction defendant for his counsel's violation of RPC 3.3; and (6) denied plaintiff's request for an adverse inference jury charge.

A-0209-24

Defendant filed an appeal from the August 16, 2024 order. He argues the trial court erred when it denied his motion for sanctions because plaintiff alleged claims against him for which she lacked a good faith basis, continued to pursue those claims after it became apparent there was no good faith basis for them, and failed to prevail on any claim against defendant, some of which were dismissed on summary judgment as meritless.

II.

A.    The Evidentiary Decisions Made During Trial.

Plaintiff's merits brief identified six instances in which the trial court sustained defendant's objection to the admission of evidence at trial. Although plaintiff argues the trial court erred by excluding evidence related to the documents discovered by plaintiff's daughter, of the six trial court decisions identified by plaintiff, only one concerns documents that fit that description. The other five decisions identified by plaintiff address: (1) a statement made by a contractor to plaintiff explaining why he declined her offer to perform repair work; (2) copies of photographs of water damage to the home for which plaintiff provided no foundation; (3) a photograph of a beam in the residence for which plaintiff provided no foundation; (4) a letter from plaintiff's insurance adjuster; and (5) a report from plaintiff's insurance adjuster.

A-0209-24

As a general matter, we will not reverse an evidentiary decision of the trial court absent a finding of abuse of discretion. E.g., Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383 (2010). "The trial court is granted broad discretion in determining both the relevance of the evidence to be presented and whether its probative value is substantially outweighed by its prejudicial nature." Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999). We reverse only those evidentiary decisions "so wide off the mark that a manifest denial of justice resulted." Ibid. (quoting State v. Carter, 91 N.J. 96, 106 (1982)). There must have been "a 'clear error in judgment'" to warrant reversal. State v. Medina, 242 N.J. 397, 412 (2020) (quoting State v. Scott, 229 N.J. 469, 479 (2017)).

Plaintiff's brief provides no substantive argument with respect to the trial court's decisions upholding defendant's objection to the five exhibits unrelated to the documents discovered by plaintiff's daughter. Having been presented with no cogent argument the trial court made a clear error in judgment with respect to the admissibility of that evidence, we have no basis on which to reverse the trial court's decisions sustaining defendant's objections.

With respect to the documents discovered by plaintiff's daughter, plaintiff's sole argument is the trial court violated the law of the case doctrine

15

when it reconsidered the pretrial motion judge's decision with respect to the admissibility of those exhibits.  The law of the case doctrine provides "a legal decision made in a particular matter 'should be respected by all other lower or equal courts during the pendency of that case.'"  Lombardi v. Masso, 207 N.J. 517, 538 (2011) (quoting Lanzet v. Greenberg, 126 N.J. 168, 192 (1991)).  The doctrine is discretionary, but embodies the judicial policy that "once an issue is litigated and decided in a suit, relitigation of that issue should be avoided if possible."  Gonzalez v. Ideal Tile Importing Co., 371 N.J. Super. 349, 356 (App. Div. 2004) (quoting Sisler v. Gannett Co., 222 N.J. Super. 153, 159 (App. Div. 1987)).

However,

> where a litigation has not terminated, an interlocutory order is always subject to revision where the judge believes it would be just to do so.  The rules governing final judgements, for example, that evidence must be newly discovered to be considered, R. 4:50-1(b), do not apply in the interlocutory setting.  Nor is the judge constrained, as would a reviewing court be, by the original record.
>
> [Lombardi, 207 N.J. at 536-37.]

The doctrine, "insofar as it is applied to rules or orders of an interlocutory nature is itself discretionary.  It should be applied flexibly to serve the interests of justice."  State v. Reldan, 100 N.J. 187, 205 (1985).  "Thus the proper exercise

16

of this discretion should take into account a number of relevant factors that bear on the pursuit of justice and, particularly, the search for truth." Ibid. The factors to be considered in re-examining an interlocutory order are: (1) an unfair advantage over the non-moving party, (2) the moving party's good faith, and (3) fairness to the non-moving party. Id. at 205-06. "In short, the law of the case doctrine does not obligate a judge to slavishly follow an erroneous or uncertain interlocutory ruling." Gonzalez, 371 N.J. Super. at 356. Whether the court "correctly applied the law-of-the-case doctrine is a matter of law, and therefore our standard of review is de novo." State v. K.P.S., 221 N.J. 266, 276 (2015).

Having reviewed plaintiff's arguments in light of the record and applicable legal principles, we find no error in the trial court's decision to preclude the documents that were the subject of the pretrial motion. As the trial court explained in its decision denying plaintiff's post-trial motion for sanctions, the pretrial evidentiary decision was not binding on the trial court. In addition, the pretrial decision was based on a proffered factual predicate contradicted by the testimony at trial. The trial court correctly viewed defendant's objection to the admission of the exhibits in the context of the evidence adduced at trial.

At the time the trial court decided defendant's motion, the trial record contained no evidence defendant was aware of the Lloyd's claim or the water

17

damage that was the basis of the claim. In addition, plaintiff had not introduced evidence defendant had possession of the documents found by plaintiff's daughter and left those documents in the residence. The pretrial decision, on the other hand, was predicated on the court's acceptance of plaintiff's proffer that defendant left the documents in the house and was, therefore, aware of the Lloyd's claim and the damage that was the basis of the claim. The motion court determined the exhibits, if offered as evidence, would not be hearsay because they would be offered not to prove the truth of the matter asserted, but to prove defendant was on notice of the Lloyd's claim. It was within the trial court's discretion to determine, in the context of the trial testimony, that the exhibit was hearsay.

In addition, when defendant objected to admission of the documents, plaintiff's counsel did not argue they were being offered to prove defendant was on notice of the Lloyd's claim. Instead, plaintiff's counsel argued the documents were an exception to hearsay under N.J.R.E. 803(c)(3), as statements of then-existing mental, emotional, or physical condition. Plaintiff's counsel argued the exhibits would show why the information in the documents made plaintiff think "we got ripped off" by defendant. The trial court correctly decided the exception in N.J.R.E. 803(c)(3) applies to the mental, emotional, or physical condition of

18

a declarant whose statement would otherwise be hearsay. The exception does not apply to the state of mind of a person who reads a document containing a hearsay statement. We note the "law of the case doctrine is only triggered when one court is faced with a ruling on the merits by a different and co-equal court on an identical issue." Lombardi, 207 N.J. at 539. When a court is presented with "substantially different evidence" it is not required to follow a prior motion ruling. Tully v. Mirz, 457 N.J. Super. 114, 128 (App. Div. 2018) (quoting Pressler & Verniero, Current N.J. Court Rules, cmt. 4 on R. 1:36-3 (2019)).[2]

B.      Stricken Trial Testimony.

Plaintiff argues the trial court improperly struck "portions of testimony" in violation of N.J.R.E. 804(a)(4). Plaintiff's merits brief identifies the evidentiary decision she challenges only with the citation "T1 p. 99 L. 1-9." Those nine lines of the transcript provide:

> Q.     Do you know why Remmey doesn't mention the roof at all?
>
> A.     I don't know why. You have to ask him.

---

[2]   The court that heard the pretrial motion did not decide the documents discovered by plaintiff's daughter were admissible. It denied defendant's argument to bar admission of the documents as evidence because they contained hearsay. The court decided only that if the documents were offered to prove defendant had notice of the Lloyd's claim and the damage underlying that claim they would not be hearsay.

A-0209-24

[DEFENDANT'S COUNSEL]: Objection, Your Honor.

THE COURT: Come on up to the sidebar.

[PLAINTIFF'S COUNSEL]: I'll strike that.

THE COURT: Okay. So that last question and answer is (sic) stricken. It must be disregarded by the jury.

The only transcript citation offered by plaintiff in support of this argument concerns a question her counsel withdrew. There is, therefore, no relief that can be afforded to plaintiff on this point.

C.      Jury Instructions.

In support of this argument, plaintiff's merits brief cites "T6 p.8, L. 7-25." That portion of the transcript includes part of counsel's discussion with the court regarding how to respond to the jury's question, "can we take an adverse interest (sic) against the defendant because his wife did not testify?" The court decided an adverse inference instruction was not warranted. Plaintiff also cites the verdict sheet in support of her argument. The only legal argument offered by plaintiff, apart from the summary of the holdings in two precedents which are not on point, is "[u]ltimately, in our case, there was trickery from start (relitigating the in limine motions) to finish (closing and jury instructions);

20

therefore, if the matter is not reversed and remanded for a new trial this will send a terrible message to trial judges and unscrupulous counsel."

In reviewing the adequacy of the judge's charge to the jury, we must consider the charge as a whole to determine if it was prejudicial. See State v. Figueroa, 190 N.J. 219, 246 (2007) (Rivera-Soto, J., dissenting) (citing State v. Wilbely, 63 N.J. 420, 422 (1973)). "[A]ppropriate and proper charges are essential for a fair trial." State v. Baum, 224 N.J. 147, 158-59 (2016) (quoting State v. Reddish, 181 N.J. 553, 613 (2004)); State v. Collier, 90 N.J. 117, 122 (1982) (quoting State v. Green, 86 N.J. 281, 287 (1981)). "[E]rroneous jury instructions 'constitute[] reversible error where the jury outcome might have been different had the jury been instructed correctly.'" Washington v. Perez, 219 N.J. 338, 351 (2014) (quoting Velazquez v. Portadin, 163 N.J. 677, 688 (2000) (alteration in original)). Plaintiff identified no basis on which to conclude the verdict should be vacated because of the trial court's instructions.

D.    Defense Counsel's Closing Argument.

Our review of defendant's closing argument revealed defendant's counsel repeatedly told the jury plaintiff breached the sales contract by failing to take more meaningful actions with respect to the home inspection. These statements, to which plaintiff's counsel did not object, misrepresented plaintiff's contractual

21

obligations. She did not agree in the contract to conduct an inspection of the property or to conduct any analysis recommended in an inspection report.

Counsel's statements had an impact on the jury, which returned the questions: (1) "If we find both parties breached the contract how do we proceed?"; and (2) "[I]s the plaintiff in breach of contract by not following up on the inspection recommendations?" Plaintiff argued the answer to the second question should be, "No." The trial court rejected that approach and instructed the jury, "that is a determination of fact for you to decide." Ultimately, however, the jury unanimously found plaintiff "performed substantially all of her obligations under the contract."

"As a general matter, 'counsel is allowed broad latitude in summation [and] counsel may draw conclusions even if the inferences that the jury is asked to make are improbable, perhaps illogical, erroneous or even absurd.'" Bender v. Adelson, 187 N.J. 411, 431 (2006) (alteration in original) (quoting Colucci v. Oppenheim, 326 N.J. Super. 166, 177 (App. Div. 1999)). "Summation commentary, however, must be based in truth, and counsel may not 'misstate the evidence nor distort the factual picture.'" Ibid. (quoting Colucci, 326 N.J. Super. at 177). A closing statement "transgresses the boundaries of the broad latitude otherwise afforded to counsel . . . if the comments are so prejudicial that 'it

A-0209-24

clearly and convincingly appears that there was a miscarriage of justice under the law.'" Ibid. (quoting R. 4:49-1(a)).

"To remedy the prejudice caused by untrue statements or inferences, trial courts may, depending on the severity of the prejudice, issue a curative instruction or grant a mistrial. " Id. at 433. "[A] clear and firm jury charge may cure any prejudice created by counsel's improper remarks during opening or closing argument." City of Linden v. Benedict Motel Corp., 370 N.J. Super. 372, 398 (App. Div. 2004). When a party fails to object to a closing statement, the trial court is deprived of an opportunity to cure any prejudice caused by counsel's improper remarks, and the prejudicial remarks are reviewed under the plain error standard. Id. at 397-98. We review the record to determine if "comments are so prejudicial that it clearly and convincingly appears that there was a miscarriage of justice under the law." Adelson, 187 N.J. at 431 (quoting R. 4:49-1(a)).

Although plaintiff did not object during defendant's closing statement, her counsel did proffer a response to the jury question that plaintiff had no contractual obligation to defendant to inspect the property. The trial court could have issued a clear jury charge explaining plaintiff had no contractual obligation with respect to the inspection of the property. Instead, the court perpetuated the

23

error by instructing the jury it was within their province to determine whether plaintiff breached the contract. However, the jury's unanimous determination plaintiff did not breach the sales contract establishes she was not harmed by the error.

E.    The July 19, 2024 Order.

We have recognized that, in some circumstances, a trial court has the inherent authority, independent of its authority granted under Rule 1:4-8, to award attorney's fees for unreasonable litigation conduct. See e.g., Triffin v. Automatic Data Processing, Inc., 394 N.J. Super. 237, 250-51 (App. Div. 2007) ("Separate and distinct from court rules and statutes, courts possess an inherent power to sanction an individual for committing a fraud on the court."). However, "[e]ven assuming the existence of such inherent power, it must be exercised with restraint and discretion because of its potency." Dziubek v. Schumann, 275 N.J. Super. 428, 439 (App. Div. 1994). "[T]he imposition of such a sanction is generally not imposed under this power without a finding generally that the attorney's conduct constituted or was tantamount to bad faith." Id. at 440.

We see no error in the trial court's conclusion sanctions against defendant were not warranted here. As the trial court explained in detail, it was fully aware

24

of the pretrial decision concerning the evidence relating to Superstorm Sandy and the Lloyd's claim. Defense counsel's failure to mention the pretrial decision each time he objected to the admission of evidence was not an ethical violation. We note in the one instance cited in plaintiff's brief in which the court excluded documents related to the Lloyd's claim, plaintiff's counsel also did not mention the pretrial evidentiary decision. Nor are we convinced any of the other grounds advanced by plaintiff warrant reversal of the June 19, 2024 order.

We turn to defendant's appeal of the August 16, 2024 order. We review a decision on a motion for frivolous lawsuit sanctions under "an abuse of discretion standard." United Hearts, L.L.C. v. Zahabian, 407 N.J. Super. 379, 390 (App. Div. 2009) (citing Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005)). We will reverse such a decision only if "it 'was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment.'" McDaniel v. Lee, 419 N.J. Super. 482, 498 (App. Div. 2011) (quoting Masone, 382 N.J. Super. at 193).

Rule 1:4-8 and N.J.S.A. 2A:15-59.1 authorize sanctions and reasonable attorney's fees against parties for bringing frivolous litigation before the court. N.J.S.A. 2A:15-59.1(a)(1) provides that a prevailing party in "a civil action,

either as plaintiff or defendant, against any other party may be awarded all reasonable litigation costs and reasonable attorney fees, if the judge finds at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous."  To find a complaint frivolous:

> [T]he judge shall find on the basis of the pleadings, discovery, or the evidence presented that either:  (1) The complaint . . . was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury; or (2) The nonprevailing party knew, or should have known, that the complaint . . . was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.
>
> [N.J.S.A. 2A:15-59.1(b).]

"For purposes of imposing sanctions under Rule 1:4-8, an assertion is deemed 'frivolous' when 'no rational argument can be advanced in its support, or it is not supported by any credible evidence, or it is completely untenable.'" United Hearts, L.L.C., 407 N.J. Super. at 389 (quoting First Atl. Fed. Credit Union v. Perez, 391 N.J. Super. 419, 432 (App. Div. 2007)).  Therefore, "[w]here a party has reasonable and good faith belief in the merit of the cause," a motion for sanctions will be denied.  Perez, 391 N.J. Super. at 432.  Indeed, "[t]he nature of conduct warranting sanction under Rule 1:4-8 has been strictly construed,"

and "'the term "frivolous" should be given a restrictive interpretation' to avoid limiting access to the court system." Id. at 432-33 (first quoting Wyche v. Unsatisfied Claim & Judgment Fund, 383 N.J. Super. 554, 560 (App. Div. 2006); then quoting McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 561-62 (1993)).

We have reviewed the record and find no basis on which to conclude the trial court mistakenly exercised its discretion when it denied defendant's motion for sanctions. There is sufficient support in the record for the trial court's conclusion plaintiff acted in good faith when she alleged her claims against defendant and pursued those claims through trial. We therefore affirm the August 16, 2024 order.

To the extent we have not specifically addressed any of the parties' remaining contentions, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

27

A-0209-24